## A98A1851. HENDERSON v. JUSTICE.
(514 SE2d 713)

RUFFIN, Judge.

The Superior Court of Floyd County, Georgia held Gordon Henderson in wilful contempt for failure to surrender custody of his minor child to the child's mother, Regina Justice, in accordance with its order modifying an Alabama divorce decree and custody order. Henderson appeals the contempt order, arguing that the underlying

---

modification order was void because the Georgia court lacked jurisdiction. For reasons which follow, we reverse.

Many of the relevant facts of this case are set forth in our opinion in *Henderson v. Justice*, 223 Ga. App. 591 (1) (478 SE2d 434) (1996), where we first addressed the jurisdictional issue. Henderson and Justice were divorced in Mobile County, Alabama in 1992. Pursuant to the Alabama divorce decree, Justice was awarded custody of their two minor children and Henderson was granted visitation rights.

After the entry of the divorce decree, Justice remarried and moved to Floyd County, Georgia. In February 1995, Justice petitioned the Floyd County Superior Court to modify Henderson's visitation rights. Henderson argued that the Georgia court lacked jurisdiction to modify the Alabama decree. On September 14, 1995, the Floyd County Superior Court issued an order concluding that Georgia did have jurisdiction, confirming that Justice had custody over the children, and modifying Henderson's visitation rights.

On July 12, 1995, Henderson filed a motion in the Circuit Court of Mobile County, Alabama to enforce the original Alabama decree. On September 11, 1995, three days before the Georgia court issued its order, the Mobile County Circuit Court issued an order finding that "jurisdiction of this matter remains in the State of Alabama" and awarding temporary custody of the children to Henderson. The order indicated that the Alabama judge had "on numerous occasions attempted to contact Judge Matthews in Floyd County, Georgia, who has failed or refused to discuss the merits of this case on the question of jurisdiction."

Henderson appealed the September 14, 1995 order of the Floyd County court, arguing that the court lacked jurisdiction to address custody. *Henderson*, supra. We concluded that, under the Parental Kidnapping Prevention Act, 28 USC § 1738A (PKPA), "[t]he Georgia court cannot modify the Alabama decree unless it . . . determines that the Mobile County, Alabama court that originally entered the decree has lost or declined to exercise jurisdiction." (Punctuation omitted.) Id. at 593 (1). Since the Floyd County court had not undertaken this analysis, we vacated the judgment and remanded for further factual findings. Id. at 594.

On remand, the Floyd County court issued a second order, dated June 12, 1997, that read:

> The Court is aware, and the record reflects that after the within modification petition was filed in Georgia . . . a similar petition was filed in Alabama. This case was assigned to Judge Walther of this circuit and only reassigned to the undersigned at a later time. Following the reassignment and

in discussion with Judge Walther, the undersigned was notified that Judge Walther had conducted a telephone discussion with the judge handling the Alabama petition and Judge Walther was told by that judge that he would defer to Georgia to hear the case.

The Floyd County court concluded that Alabama had declined to exercise jurisdiction and, therefore, Georgia had exclusive jurisdiction to address custody and visitation issues. Accordingly, the court reaffirmed its September 14, 1995 order modifying visitation.

Henderson filed an application for discretionary appeal of the June 12, 1997 order, asserting that the Floyd County court lacked jurisdiction over the matter. We denied the application on July 28, 1997.

On June 18, 1997, six days after the Floyd County court's order, Justice filed a motion with the Floyd County court seeking to hold Henderson in contempt for refusing to turn over the child as required by the court's order. On August 26, 1997, the Mobile County, Alabama court issued an order holding that Alabama had retained jurisdiction over this matter and refusing to give full faith and credit to the Floyd County court's order.

On March 6, 1998, the Floyd County court entered an order holding Henderson in contempt for failing to appear in court and for failing to surrender custody of the child. It is from this order that Henderson appeals.

1. Henderson contends that the underlying modification order entered by the Floyd County judge was void for lack of subject matter jurisdiction, and that he therefore cannot be held in contempt for violation of that order. See *In re Estate of Adamson*, 215 Ga. App. 613, 614 (2) (451 SE2d 501) (1994) (order of contempt cannot be based on noncompliance with a void order). After the entry of the June 12, 1997 order, Henderson filed an application for discretionary review, which this Court denied on July 28, 1997. Therefore, it is necessary for us to consider whether the denial of the discretionary application prohibits us from reconsidering the validity of the modification order.

In *Harris v. Harris*, 245 Ga. 75 (263 SE2d 113) (1980), the Supreme Court discussed the nature of the discretionary appeal process. The Supreme Court held that the discretionary appeal statute:

does not deny a party appellate review, but rather, establishes an appellate review process with the following two steps: (1) initial appellate review of a record which will include copies of such parts of the trial court record or transcript as the appellant or appellee deem appropriate; (2) if the initial appellate review reveals that the appellant's

enumerations of error are clearly without merit then the application for appeal is dismissed; if however the initial appellate review reveals that the appellant's enumerations of error are not clearly without merit, then the application for appeal is granted and a final appellate review ensues.

(Punctuation omitted.) Id. at 76. Thus, the Supreme Court held that the discretionary appeal process is merely an alternative process by which an appellant may secure appellate review of a decision. The denial of an application for discretionary appeal is not the denial of the right to appeal, but an adjudication by the appellate court that the enumerations raised by the appellant are clearly without merit.

In several cases, this Court has recognized that the denial of an application for discretionary appeal invokes the doctrine of res judicata where the judgment appealed from was final and on the merits. See *McLemore v. Stephenson*, 181 Ga. App. 828, 829 (354 SE2d 828) (1987); *Martin v. State*, 185 Ga. App. 145, 146 (1) (363 SE2d 765) (1987); *Steele v. Niggelie*, 163 Ga. App. 98 (293 SE2d 368) (1982). However, when the judgment being appealed was interlocutory in nature, the denial of an application for discretionary appeal does not operate as res judicata, since the denial could have been based on the appellate court's desire to wait until a final judgment was entered before exercising appellate review, rather than a determination on the merits. See *C & S Nat. Bank v. Rayle*, 246 Ga. 727, 731 (273 SE2d 139) (1980). In addition, where the judgment from which discretionary appeal is sought is also the subject of a direct appeal, the denial of the discretionary application does not necessarily act as an adjudication on the merits, since the discretionary appeal is redundant. See *Berger & Washburne Ins. Agency v. Commercial Ins. Brokers*, 204 Ga. App. 146, 147 (1) (418 SE2d 640) (1992); *In the Interest of C. D. B.*, 182 Ga. App. 263, 264 (1) (355 SE2d 759) (1987) (physical precedent only).

Henderson contends that the modification order did not constitute a final order due to the pendency of Justice's motion to hold him in contempt for violation of such order. However, Justice's contempt motion was not filed until six days *after* the entry of the modification order. Clearly, the fact that a party files a motion for contempt seeking to enforce the terms of a final order does not affect the finality of the order or extend the time in which to file an appeal from such order. See *Brown v. King*, 266 Ga. 890-891 (472 SE2d 65) (1996) (a contempt action to enforce a court order is an independent proceeding that is ancillary to the underlying action). Because the modification order was a final judgment on the merits, our denial of Henderson's application for discretionary appeal constituted an adjudication on the merits of the appeal. *Martin*, supra; *McLemore*, supra.

2. We must next consider whether our denial of the discretionary application prohibits Henderson from collaterally attacking the validity of the modification order as a defense to Justice's contempt motion. OCGA § 9-11-60 (a) provides that "[a] judgment void on its face may be attacked in any court by any person." In *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993), the Supreme Court held that the phrase "void on its face" means "those judgments which lack either personal or subject matter jurisdiction."

Although OCGA § 9-11-60 (a) allows a judgment void on its face to be attacked in any court, the application of that principle is limited by the law of the case rule, which provides that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). We previously held that, under the law of the case rule, this Court is bound by its previous rulings in the same proceedings. *Rabern v. State*, 231 Ga. App. 84, 85 (1) (497 SE2d 631) (1998); *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629, 630-631 (2) (493 SE2d 196) (1997); Gregory, Ga. Civil Practice (1990) at 566 ("once an appellate [court] announces a decision on an issue that is the law of that case not only for the trial court but for the appellate court as well"). As discussed above, our previous denial of Henderson's application for discretionary appeal constituted an adjudication on the merits of Henderson's claim that the trial court lacked jurisdiction to enter the modification order. Thus, unless this case falls under an exception to the law of the case rule, we are precluded from reconsidering whether the underlying modification order is void for lack of jurisdiction.

> An exception to the rule that will permit issues to be relitigated after appeal is when the evidentiary posture of the case changes. . . . Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate.

(Punctuation omitted.) *Brown*, supra at 629 (1). "Our review is limited to the effect of the new evidence, and we are precluded from reconsidering previously decided issues except to the extent of the additional evidence." Id. at 630 (1).

On August 26, 1997, after we issued our order denying Henderson's application for discretionary appeal, the Mobile County Circuit Court in Alabama issued an order finding that it:

> has had jurisdiction over this matter since the filing of the

complaint for divorce in this Court and the divorce decree entered on December 8, 1992. This Court retained continuing and exclusive jurisdiction in this matter pursuant to Alabama law and properly exercised its continuing and exclusive jurisdiction through numerous Orders including those dated April 22, 1994, June 9, 1994, May 26, 1995, July 21, 1995, September 11, 1995, November 28, 1995, January 31, 1996, April 16, 1996, and May 16, 1996. This Court has jurisdiction over pending motions. . . . This Court has never declined or deferred jurisdiction of this matter to the Superior Court of Floyd County, Georgia, and to the contrary, has consistently exercised its continuing and exclusive jurisdiction as set out above in compliance with Alabama law and the P.K.P.A.

Therefore, the Alabama court denied Justice's request to give full faith and credit to the Floyd County court's modification order. In *Justice v. Henderson*, 720 S2d 940 (Ala. Civ. App. 1998), the Alabama Court of Civil Appeals affirmed the Mobile County Circuit Court's order.

In view of these subsequent rulings by the Alabama courts demonstrating that Alabama has, in fact, retained jurisdiction over the custody issue, we find the evidentiary posture of this case has changed. Accordingly, there is no violation of the law of the case rule and we can address whether the underlying Floyd County court modification order is void for lack of jurisdiction.

3. As we noted in *Henderson v. Justice*, supra, "the PKPA applies in all interstate child custody disputes and provides uniform guidelines for resolving such disputes." (Punctuation omitted.) Id. at 592 (1). "In essence, the PKPA imposes on states a federal duty, under standards derived from the [Uniform Child Custody Jurisdiction Act], to give full faith and credit to a custody decree of a sister state." *Wilson v. Gouse*, 263 Ga. 887, 889 (1) (441 SE2d 57) (1994).

Pursuant to section (f) of the PKPA, a court of one state can modify the child custody order of another state's court only if: (1) it has jurisdiction to make such a child custody determination; *and* (2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(Punctuation omitted.) *Garrett v. Garrett*, 267 Ga. 356, 357 (1) (477 SE2d 804) (1996).

This case shares virtually identical facts with *Garrett*, supra. In *Garrett*, the parties divorced in Alabama. The mother moved to Geor-

gia with the minor child while the father remained a resident of Alabama. Following allegations that the father had molested the child, the mother filed a petition in a Georgia court seeking modification of the Alabama decree. The Supreme Court concluded that Alabama had retained jurisdiction: (1) because the father remained a resident of the state; and (2) because Alabama law provides for exclusive continuing jurisdiction. Id. at 357-358 (2).

The Supreme Court noted that

> under Alabama law, the jurisdiction of that state's court would continue . . . because the exercise of child visitation rights awarded by the Alabama court to [the father] results in a significant connection between that state and the child and substantial evidence exists in Alabama as to whether those child visitation rights awarded to [the father] should be modified because of the manner in which he is alleged to have exercised those rights in that state.

Id. at 359 (2). Thus, the Supreme Court found that "the PKPA limits the exercise of the Georgia court's jurisdiction to modify the original Alabama child custody decree." Id. at 360.

Here, as in *Garrett,*

> [i]t is clear that the Georgia court has jurisdiction to modify the original Alabama child custody order, since Georgia is now the "home state" of [Justice] and the [minor children].[1] OCGA § 19-9-43 (a) (1) (A). Therefore, resolution of this case is dependent upon whether the Alabama court has continuing jurisdiction to modify its original child custody order. . . . If the Alabama court has continuing jurisdiction to modify its original child custody order and has not declined to exercise that jurisdiction, then the PKPA limits the exercise of the Georgia court's jurisdiction to do so.

Id.

The distinction between this case and *Garrett* is that here, the Floyd County court concluded that Alabama declined jurisdiction based upon a conversation between Judge Walther and an Alabama judge in which the Alabama judge indicated that he would defer jurisdiction to Georgia.[2] Pretermitting the issue of whether the

---

[1] "In this case, the trial court found, supported by ample evidence in the record, that Georgia is the 'home state' of the minor children." *Henderson* at 593 (1).

[2] Following remand by this Court in *Henderson,* supra, the trial court conducted a hearing on February 11, 1997 at which time the parties stipulated that Judge Walther had no independent recollection of the substance of his conversation with the Alabama judge.

recounting of this earlier conversation was sufficient to determine that Alabama had declined to exercise jurisdiction, at the time the Georgia court entered its June 1997 order, the judge had an exemplified copy of the order of the Alabama court that clearly demonstrated that Alabama was, in fact, exercising jurisdiction over the custody issue.

According to section (g) of the PKPA,

[a] court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 USC § 1738A. As other jurisdictions have recognized, this "first in time" rule is "designed to prevent jurisdictional squabbles." *Matter of C. A. D.*, 839 P2d 165, 172 (Okla. 1992).

Here, Justice filed her petition in Georgia prior to Henderson filing a petition in Alabama. Arguably, this means that Alabama should have deferred to Georgia with regard to the custody issue. However, according to Alabama's court orders, Alabama has never declined to exercise jurisdiction in which case Georgia should have yielded to Alabama. OCGA § 19-9-46 (c) provides, in pertinent part, that "[if a] court [of this state] is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court, to the end that the issues may be litigated in the more appropriate forum." This requirement serves "to avoid overlapping adjudication and [prevents] judgment races." *Webb v. Webb*, 245 Ga. 650, 652 (2) (266 SE2d 463) (1980).

Congress enacted the PKPA to discourage forum shopping and to prevent "widespread jurisdictional deadlock." *Thompson v. Thompson*, 484 U. S. 174, 180-181 (108 SC 513, 98 LE2d 512) (1988). In this case, by issuing an order in direct conflict with the Alabama order, the Floyd County court created just this kind of "jurisdictional deadlock." Upon learning that Alabama was exercising jurisdiction over this matter, the Floyd County court should have initiated discussions with the Alabama court in keeping with OCGA § 19-9-46 to avoid this "jurisdictional squabble." Given the evidence that Alabama has retained exclusive continuing jurisdiction, it was improper for the Floyd County court to exercise its jurisdiction. See *Garrett*, supra; *Steele v. Steele*, 250 Ga. 101, 106 (296 SE2d 570) (1982). Accordingly, the underlying modification order is void for lack of subject matter jurisdiction. It follows that the contempt order must be reversed as "an order of contempt cannot be based on non-compliance with a void

order." (Punctuation omitted.) *In re Woodall*, 231 Ga. App. 391, 396 (1) (499 SE2d 150) (1998).

*Judgment reversed. Pope, P. J., concurs. Beasley, P. J., concurs in the judgment only.*

DECIDED MARCH 17, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 —

*Custer & Hill, Douglas A. Hill*, for appellant.
*Smith, Price & Wright, Charles G. Price*, for appellee.